1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7

8

9

10

11

12

| | |
|---|---|
| FIDELITAD, INC.,<br><br>                    Plaintiff,<br><br>       v.<br><br>INSITU, INC.,<br><br>                    Defendant. | NO:  13-CV-3128-TOR<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT V OF THE SECOND AMENDED COMPLAINT |

13

14

15

16

17

18

19

20

        BEFORE THE COURT is Defendant's Motion to Dismiss Count V of

Plaintiff's Second Amended Complaint (ECF No. 39).  This matter was heard with

oral argument on October 14, 2014.  Mark G. Jackson and Kevin A. Rosenfield

appeared on behalf of the Plaintiff.  Eric B. Wolff appeared on behalf of

Defendant.  The Court has reviewed the briefing and the record and files herein,

and is fully informed.

//

//

ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT V ~ 1

# BACKGROUND[1]

Plaintiff was formed in early 2010 by Eric Edsall and Alejandro Pita.  Prior to forming the company, Mr. Edsall and Mr. Pita were employed by Defendant as, respectively, the head of international business development and head of program management.  In these roles, Mr. Edsall and Mr. Pita were responsible for driving sales of unmanned aerial systems ("UAS") manufactured by Defendant known as the ScanEagle.

In late 2009, while still employed by Defendant, Mr. Edsall and Mr. Pita traveled to Colombia to meet with representatives of the Columbian Air Force. While in the country, Mr. Edsall and Mr. Pita identified a number of new, non-military applications for the ScanEagle.  These applications included, among others, monitoring oil pipelines located in remote areas.

Upon returning to the United States, Mr. Edsall and Mr. Pita met with several of Defendant's executives to discuss the new opportunities they had identified in Colombia.  Insitu was generally supportive, but was hesitant to divert resources away from its core military-focused applications.  Thus, Mr. Edsall and

---

[1] Unless otherwise noted, these are taken from Plaintiff's Second Amended Complaint (ECF No. 37) and are considered true for the purpose of the instant motion only.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT V ~ 2

1   Mr. Pita proposed to form a new business, at their own risk and expense, to act as a

2   value-added reseller of Defendant's products in Colombia.  Shortly thereafter,

3   Defendant granted Plaintiff the exclusive right to sell Defendant's products in

4   Colombia.  The parties also entered into a written Mutual Proprietary Information

5   Agreement specifying the purposes for which proprietary information exchanged

6   between them could be used.

7        In the months that followed, Plaintiff developed several potential sales

8   opportunities with customers in Columbia.  Plaintiff kept Defendant apprised of its

9   progress and gave several presentations outlining its business strategy.  Eventually,

10  Plaintiff closed several sales with customers in Colombia and placed orders for

11  UAS products with Defendant.

12       Plaintiff alleges that Defendant then "intentionally and maliciously moved

13  forward with a charade of 'legal review' and 'license requirements' to delay the

14  shipment of products to Fidelitad."  Pl.'s Compl., ECF No. 37 at ¶ 61.

15  Specifically, Plaintiff contends that Defendant delayed processing of the sales

16  under the guise of needing to perform a Risk/Benefit Analysis Memorandum and

17  other legal compliance reviews.  Pl.'s Compl., ECF No. 37 at ¶¶ 64-65, 72.

18  Plaintiff further alleges that Defendant delayed shipping a ScanEagle and related

19  equipment under the pretext of seeking clarification from the U.S. Department of

20  State about the scope of an export license granted to Plaintiff.  Pl.'s Compl., ECF

ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT V ~ 3

No. 37 at ¶¶ 78-81.  In Plaintiff's estimation, the purpose of these delay tactics was to create tension between Plaintiff and its Colombian customers, thereby paving the way for Defendant to sell its products to the customers directly.

Plaintiff alleges that Defendant's deliberate delay in processing its orders caused its customers to cancel their sales contracts.  According to Plaintiff, this resulted in a loss of several million dollars in sales revenue.  Fidelitad further alleges that Defendant has since completed several million dollars' worth of sales to the same Colombian customers whom Plaintiff had previously cultivated.

Plaintiff filed the instant lawsuit in Klickitat County Superior Court on October 16, 2013.  Defendant removed the case to this Court on November 20, 2013, pursuant to 28 U.S.C. § 1442(a)(1), the so-called federal officer removal statute.  ECF No. 37.  Plaintiff thereafter filed a motion to remand, arguing that the requirements for federal officer removal have not been satisfied.  ECF No. 6. That motion was denied. ECF No. 17.

Plaintiff's Second Amended Complaint asserts state law causes of action for (I) violation of the Washington Uniform Trade Secret Act (WUTSA), (II) breach of the Proprietary Information Agreement, (III) breach of the implied duty of good faith and fair dealing, (IV) unjust enrichment, and (V) tortious interference with business expectancy.  ECF No. 37.  Defendant now brings a motion to dismiss

Plaintiff's claim for tortious interference arguing the claim is preempted by the

WUTSA claim and also that it is fatally implausible.  ECF No. 39-1.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing

that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This standard "does

not require detailed factual allegations, but it demands more than an unadorned, the

defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In

assessing whether Rule 8(a)(2) has been satisfied, a court must first identify the

elements of the plaintiff's claim(s) and then determine whether those elements

could be proven on the facts pled.  The Court should generally draw all reasonable

inferences in the plaintiff's favor, *see Sheppard v. David Evans and Assocs.*, 694

F.3d 1045, 1051 (9th Cir. 2012), but it need not accept "naked assertions devoid of

further factual enhancement."  *Iqbal*, 556 U.S. at 678 (internal quotations and

citation omitted).  "Dismissal can be based on the lack of a cognizable legal theory

or the absence of sufficient facts alleged under a cognizable legal theory."

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

## DISCUSSION

Defendant argues first that Plaintiff's claim for tortious interference with

business expectancies should be dismissed because it is based on the same facts as

ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT V ~ 5

Plaintiff's WUTSA claim and is thereby preempted under the WUTSA statute.

Plaintiff contends on the other hand that the claims are based upon different

underlying facts and that Defendant's motion should be dismissed.

The WUTSA allows a plaintiff to recover monetary damages for the

misappropriation of trade secrets.  RCW 19.108.030.  Misappropriation is the

> (a) Acquisition of a trade secret of another by a person who knows or
> has reason to know that the trade secret was acquired by improper
> means; or

> (b) Disclosure or use of a trade secret of another without express or
> implied consent by a person who:

> > (i) Used improper means to acquire knowledge of the trade
> > secret; or

> > (ii) At the time of disclosure or use, knew or had reason to
> > know that his or her knowledge of the trade secret was (A)
> > derived from or through a person who had utilized improper
> > means to acquire it, (B) acquired under circumstances giving
> > rise to a duty to maintain its secrecy or limit its use, or (C)
> > derived from or through a person who owed a duty to the
> > person seeking relief to maintain its secrecy or limit its use; or

> > (iii) Before a material change of his or her position, knew or
> > had reason to know that it was a trade secret and that
> > knowledge of it had been acquired by accident or mistake.

RCW § 19.108.010(2).  "'Improper means' includes theft, bribery, misrepresentation,

breach or inducement of a breach of a duty to maintain secrecy, or espionage through

electronic or other means."  RCW § 19.108.010(1).  It is the Plaintiff's burden to

establish the existence of a trade secret, that it was misappropriated, and that the

ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT V ~ 6

acquisition was done by improper means or through a person who owed a duty to maintain the secrecy of the trade secret. *Petters v. Williamson & Associates, Inc.*, 151 Wash.App. 154, 164 (2009).

The WUTSA "displaces conflicting tort, restitutionary, and other law of this state pertaining to civil liability for misappropriation of a trade secret." RCW 19.108.900(1). The WUTSA does not, however, affect "contractual or other civil liability or relief that is not based upon misappropriation of a trade secret." RCW 19.108.900(2)(a); *see also Ed Nowogroski Ins., Inc. v. Rucker*, 88 Wash.App. 350, 357–58 (1997). In evaluating whether a cause of action is preempted under the WUTSA, courts

> (1) assess the facts that support the plaintiff's civil claim, (2) ask whether those facts are the same as those that support the plaintiff's UTSA claim, and (3) hold that the UTSA preempts liability on the civil claim unless the common law claim is factually independent from the UTSA claim.

*Thola v. Henschell,* 140 Wash.App. 70, 82 (2007); *accord Int'l Paper Co. v. Stuit*, No. 11-CV-2139, 2012 WL 3527932, at *2 (W.D. Wash. Aug 15, 2012).

To carry its tortious interference claim, Plaintiff must show "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and

ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT V ~ 7

1    (5) resultant damages." *Int'l Paper*, 2012 WL 3527932, at *2 (citing *Commodore*

2    *v. Univ. Mech. Contractors, Inc.*, 120 Wash.2d 120, 137 (1992)).  The difference

3    between Plaintiff's WUTSA claim and its tortious interference claim is the

4    misappropriation of a trade secret.  Plaintiff "may not rely on acts that constitute

5    trade secret misappropriation" to support its tortious interference claim.  *Thola*,

6    140 Wash.App. at 82.  On the other hand, where evidence establishing a tortious

7    interference claim "does not involve the acquisition or disclosure of confidential

8    information" in a manner that would establish a WUTSA claim, a tortious

9    interference claim is not preempted.  *Id.* at 83.

10       Plaintiff contends that its "business plan, master plan, customer

11    development, and other information" constitute trade secrets.  ECF No. 37 at ¶108.

12    Plaintiff further contends that Defendant misappropriated these trade secrets

13    without Plaintiff's consent.  *Id.* ¶112.  These allegations, should they be proven

14    true, may preempt a tortious interference claim where Defendant's knowledge of

15    Plaintiff's business relationships, as Plaintiff alleges, was founded upon the

16    misappropriation of trade secrets.  However, the Court is not convinced at this

17    point that the voluntary disclosure of trade secrets constitutes misappropriation, in

18    which case Plaintiff's tortious interference claim would likely not be preempted.

19       The Court views Plaintiff's Count I and Count V as alternatives.  Plaintiff

20    may succeed on the merits of Count I if it can prove that Defendant

ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT V ~ 8

1    misappropriated trade secrets.  Should Plaintiff fail to establish sufficient evidence

2    for Count I, Plaintiff may still succeed on Count V if it can prove that Defendant

3    nevertheless tortuously interfered with Plaintiff's business expectancies.  At the

4    pleading stage it does not matter that these claims are potentially inconsistent.  Fed.

5    R. Civ. P. 8(d)(e).

6         It is premature to dismiss Plaintiff's tortious interference claim.  A

7    conclusion of whether a claim is preempted by the WUTSA is generally reserved

8    for later in litigation because it requires a factual analysis and facts are poorly

9    developed at the pleading stage.  *See, e.g.*, *First Advantage Background Srvcs.*

10   *Corp. v. Private Eyes, Inc.*, 569 F.Supp.2d 929, 942 (N.D. Cal. 2008) (denying

11   motion to dismiss a fraud claim as preempted by CUTSA to the extent the claim

12   was based on facts that may or may not constitute trade secrets, but affording

13   defendant ability to raise the issue again in subsequent pleadings and briefing);

14   *Int'l Paper*, 2012 WL 3527932, at *3 (denying motion to dismiss, but allowing

15   defendant to raise the issue again in later proceedings); *Thola*, 140 Wash.App. at

16   81–83 (motion for directed verdict); *Ed Nowogroski Ins., Inc.,* 88 Wash.App. at

17   355 (motion for partial summary judgment).  If it is established in later pleadings

18   or briefing that Defendant misappropriated trade secrets, the Court will consider

19   further the preemption of Plaintiff's tortious interference claim to the extent that it

20   is based upon the misappropriation of trade secrets.  However, at this this juncture,

ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT V ~ 9

the Court cannot conclude whether or not Plaintiff has established that Defendant

misappropriated trade secrets as defined by the WUTSA.  As such, the Court

cannot conclude at this phase of the proceedings whether Plaintiff's tortious

interference claim rests on "acts that constitute trade secret misappropriation."

*Thola*, 140 Wash.App. at 83.

Defendant argues in the alternative that Plaintiff's tortious interference claim

should be dismissed because it is "fatally implausible and conclusory."

Specifically, Defendant contends it had a legal right to terminate its at-will

supplier/buyer relationship with Plaintiff, and that doing so cannot, as a matter of

law, be "improper" as is required to establish a tortious interference claim.

"Exercising one's legal interest in good faith is not improper interference."

*Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wash.2d 157, 168 (2012) (en banc);

*Birkenwald Distrib. Co. v. Hueblein, Inc.,* 55 Wash.App. 1, 12 (1989) ("Asserting

one's rights to maximize economic interests does not create an inference of ill will

or improper purpose.").  However, the mere existence of at-will business

relationships is not dispositive in tortious interference claims.  *See Island Air, Inc.

v. LaBar*, 18 Wash.App. 129, 140 (1977) ("Further, the fact that a party's

terminable at will contract is ended in accordance with its terms does not defeat

that party's claim for damages caused by unjustifiable interference, for the wrong

for which the courts may give redress includes also the procurement of the

ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT V ~ 10

1  termination of a contract which otherwise would have continued in effect."

2  (internal quotation marks and alterations omitted)).  Instead, the proper inquiry,

3  "when one acts to promote lawful economic interests," is to ask whether the action

4  was taken with a "bad motive" or in "bad faith."  *Birkenwald*, 55 Wash.App. at 11

5  ("incidental interference will not suffice" to establish impropriety); *accord Elcon*

6  *Constr.*, 174 Wash.2d at 168 ("Exercising one's legal interest *in good faith* is not

7  improper interference." (emphasis added)).

8          Whether Defendant terminated its supplier relationship with Plaintiff in bad

9  faith is an issue of material fact.  At this stage, the Court must accept Plaintiff's

10  factual allegations as true and construe them in the light most favorable to Plaintiff.

11  *Sheppard*, 694 F.3d at 1048.  Plaintiff alleges that Defendant terminated its at-will

12  supplier relationship in bad faith.  Specifically, Plaintiff alleges that Defendant had

13  encouraged Plaintiff to develop the Columbian markets and had promised Plaintiff

14  exclusive distribution rights within that market.  Defendant then, Plaintiff alleges,

15  purposefully ended its supplier relationship in order to cut Plaintiff out of the

16  market Plaintiff had developed and to allow Defendant to take advantage of that

17  market to Plaintiff's detriment.  *E.g.*, ECF No. 37 at ¶31, 167, 168.  Taken as true,

18  these allegations are sufficient to establish a cognizable legal theory that Defendant

19  acted in bad faith when it ended its supplier relationship with Plaintiff.

20  Defendant's motion is denied.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT V ~ 11

1    **IT IS HEREBY ORDERED:**

2        Defendant's Motion to Dismiss Count V (ECF No. 39) is **DENIED**.

3        The District Court Executive is hereby directed to enter this Order and

4    provide copies to counsel.

5        **DATED** October 24, 2014.

6        

7                                        THOMAS O. RICE
                                     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20